IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| HANS FRANKE, *et al.*, | Case No. 19-cv-00007-DKW-RT |
|---|---|
| Plaintiffs, | **ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS** |
| vs. | |
| JULIA A. YATES, *et al.*, | |
| Defendants. | |

In this real estate contract dispute, Defendant Julia and Dennis Yates have moved pursuant to Federal Rule of Civil Procedure 12(b) to dismiss or stay the proceedings because of a parallel proceeding in Nevada state court that they assert warrants abstention under the *Colorado River* doctrine. Dkt. No. 17. At the same time, Defendant CRC, Inc. moves to dismiss this action for Plaintiffs' failure to engage in pre-suit mediation. Dkt. No. 15. Because this case does not involve the "exceptional circumstances" necessary for abstention under *Colorado River,* and because nothing in the contract between CRC and Plaintiffs requires a pre-suit mediation, both motions are DENIED.

## FACTUAL & PROCEDURAL BACKGROUND

### A. Factual Background

In 2005, Plaintiffs Hans and Louise Franke (collectively, the "Frankes") purchased a two-million-dollar home in Hawaii (the "Property"). Dkt. No. 1, ¶ 11.

Beginning in 2011, the Frankes agreed to rent the property to two Hawaii real estate agents, Defendants Julia and Dennis Yates (collectively the "Yates"). *Id.* at ¶¶ 12–13. The rental contract related to this agreement was allegedly orchestrated by Defendant CRC II, Inc. ("CRC"),[1] the Yates' employer. *Id.* at ¶¶ 13, 33. The Frankes maintain that the Yates "did not pay a fair rental value for the Property." *Id.* at ¶ 13. The basis for this claim is evidently that Mr. Franke was "exceptionally vulnerable" because of his age and medical condition, such that the Yates essentially took advantage of him in negotiating the terms of the rental agreement. *See id.* at ¶¶ 14, 15.

Sometime around August 2013, the Yates proposed a new contractual arrangement in which the Yates would: (1) purchase a ten percent ownership interest in the Property; (2) reside at the Property while paying only the "monthly property costs"; (3) make upgrades to the Property; (4) pay "cash sums" to the Frankes; and (5) eventually sell the Property for a substantial profit. *Id.* at ¶¶ 16–18. The Yates, in turn, would receive a payout from the sale. *Id.* at ¶ 19. The Frankes do not allege that they accepted this proposed arrangement. But in any event, the Yates allegedly resided on the Property for nearly three years, performed "unnecessary" upgrades, and made cash "investments" in the Property which the Yates then sought to recoup

---

[1] CRC was formerly known as Clark Realty Corporation. Dkt. No. 1, ¶ 2.

from the Frankes. *Id.* at ¶¶ 22, 23. For at least part of this time, the Frankes were not present in Hawaii. *See id.* at ¶¶ 23, 32.

By 2016, the amount the Frankes were receiving from the Yates was insufficient to cover the mortgage on the Property, and the Yates agreed to sell the Property on behalf of the Frankes. *Id.* at ¶¶ 24–25. The Property sold in 2016 to a buyer that was a friend of the Yates. In the process of selling the Property, the Yates acted as the agents for both the Frankes and the buyer. *Id.* at ¶¶ 25–28. The Frankes aver that the Yates: (a) "did not make diligent efforts to maximize the sale price"; (b) "breached their fiduciary duty"; (c) "did not move reasonably quickly to sell the Property"; and (d) "sought the return of the funds that they had delivered" to the Frankes while residing at the Property. *Id.* at ¶¶ 27, 29–31.

### B. Procedural History

On September 5, 2018, the Yates filed an action in Nevada state court against the Frankes, alleging that the Frankes "caused the escrow company to not pay" the Yates their agreed-upon amount at the closing of the sale of the Property. Dkt. No. 17-2, ¶¶ 12–13.[2] The Yates' Nevada complaint asserts claims for breach of contract and unjust enrichment and seeks damages in excess of $139,951. *Id.* at 3–4. The Frankes filed their answer, alleging (16) affirmative defenses including, *inter alia*, mitigation of damages; intervening fault; unclean hands; offset; equitable estoppel;

---

[2]CRC is not a defendant in the Nevada state court action.

fraud; unjust enrichment; and performance excused. Dkt. No. 17-3 at 6–7. The Frankes did not file any counterclaims.

On January 8, 2019, the Frankes filed this lawsuit against the Yates and CRC, asserting claims for fraud; breach of fiduciary duty; elder abuse; breach of contract; unjust enrichment; and negligent hiring and supervision of employees. Dkt. No. 1. Less than a month later (and five months after the Yates originally filed suit), the Frankes removed the state court action to Nevada federal court.[3] That court remanded the case back to Nevada state court on August 26, 2019.[4] In the interim, however, Defendants filed the instant set of motions to stay or dismiss this action. Dkt. Nos. 15, 17.

## **DISCUSSION**

### I. Yates' Motion to Stay or Dismiss Under *Colorado River*

The Yates urge the Court to dismiss or stay this case under the abstention principles established in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Dkt. No. 17 at 8. But a stay or dismissal under

---

[3] *See* Notice of Removal, *Yates v. Franke*, No. 3:19-cv-64 (D. Nev. Feb. 5, 2019), ECF No. 1.
[4] *See Yates v. Franke*, No. 3:19-cv-64, 2019 WL 4015887, at *4 (D. Nev. Aug. 26, 2019). On September 20, 2010, the state court issued a scheduling order, stating that discovery will close on February 26, 2020; dispositive motions are due March 30, 2020; and a trial will commence on May 27, 2020. Dkt. No. 47-1. On September 6, 2019, the Frankes filed a motion to dismiss or stay the proceedings in the state court for forum non conveniens. Dkt. No. 47. That motion remains pending. *Id.*

*Colorado River* is unwarranted, and therefore this Court declines to abdicate its duty to exercise jurisdiction.

Although abstention under *Colorado River* "rest[s] on considerations of wise judicial administration" and "comprehensive disposition of litigation," *Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1165 (9th Cir. 2017) (quoting *Colo. River*, 424 U.S. at 817), the Yates read *Colorado River* too broadly: "Abstention from the exercise of federal jurisdiction is the exception, not the rule." 424 U.S. at 813. Federal courts are under a "virtually unflagging obligation . . . to exercise the jurisdiction given them," *id.* at 817, and for that reason, the mere "pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)).

Under *Colorado River*, where there is a parallel, ongoing state court proceeding, "courts may refrain from deciding an action for damages only in 'exceptional' cases, and only 'the clearest of justifications' support dismissal." *See, e.g.*, *R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 978 (9th Cir. 2011) (quoting *Colo. River*, 424 U.S. at 818–19). Therefore, the question here is whether "exceptional" circumstances exist so as to warrant abstention. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 13, 15–16; *Holder v. Holder*, 305 F.3d 854, 863, 867 (9th Cir. 2002).

"To decide whether a particular case presents the exceptional circumstances that warrant a *Colorado River* stay or dismissal," the Ninth Circuit considers the following eight factors:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*R.R. St. & Co.*, 656 F.3d at 978–79. This is not a "mechanical checklist." *Seneca Ins. Co. v. Strange Land, Inc.*, 862 F.3d 835, 842 (9th Cir. 2017) (quoting *Cone Mem'l Hosp.*, 460 U.S. at 16). The balance, however, is "heavily weighted in favor of the exercise of jurisdiction," *Cone Mem'l Hosp.*, 460 U.S. at 16, and there is "a strong presumption against federal abstention." *Seneca*, 862 F.3d at 842. "Any doubt as to whether a factor exists should be resolved against a stay, not in favor of one." *Id.* (citation omitted). In the end, the task in this case "*is not* to find some substantial reason for the exercise of federal jurisdiction . . . ; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the surrender of that jurisdiction." *Cone Mem'l Hosp.*, 460 U.S. at 25–26 (emphasis added).

Applying the above factors to this case, exceptional circumstances are clearly absent. The Yates concede, for instance, that the first and sixth factors are

inapplicable (Dkt. No. 17 at 11, 17) and that the fifth factor weighs against abstention. *Id.* at 17, 20. Because the Frankes agree (Dkt. No. 30 at 9, 14), the Court will only address the remaining factors.

The second factor does not weigh in favor of abstention. It is not enough that one forum is simply "better" or "more convenient" than the other. *See Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1368 (9th Cir. 1990) (citation omitted). But the Yates' argument boils down to precisely just that. Dkt. No. 17 at 11–12. As such, "the inconvenience of the federal forum" (if any in this case) is not "so great that this factor points toward abstention." *See Madonna*, 914 F.2d at 1368 (quoting *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1192 (5th Cir. 1988)).

The third factor does not militate in favor of abstention because this case does not "raise a special concern about piecemeal litigation," which can *only* be avoided by staying or dismissing this action. *Bakie*, 867 F.3d at 1167 (citation omitted); *Colo. River*, 424 U.S. 819–20 ("The clear federal policy evinced by [the McCarran Amendment] is the avoidance of piecemeal adjudication of water rights in a river system."); *see also R.R. St. & Co.*, 656 F.3d at 979 ("The mere possibility of piecemeal litigation does not constitute an exceptional circumstance."); *United States v. Moros*, 268 F.3d 695, 706–707 (9th Cir. 2001).

As to the fourth factor—the order in which jurisdiction was obtained—the rule is not "first-to-file." The pertinent inquiry is the relative progress made in the

competing cases. *R.R. St. & Co.*, 656 F.3d at 980. In the state court action, the parties are in the early stages of discovery, *see* Dkt. No. 47, because proceedings have only recently resumed as a result of the case having been removed to federal court and then remanded. *Yates*, 2019 WL 4015887, at *4. The difference in this case, in terms of the progress made, is negligible. Therefore, the fourth factor does not point toward abstention.

The seventh factor also does not weigh against jurisdiction because it "does not constitute forum shopping where a party acted within his rights in filing a suit in the forum of his choice, even where the chronology of events suggests that both parties took a somewhat opportunistic approach to the litigation." *Seneca*, 862 F.3d at 846 (internal citations and quotation marks omitted); *R.R. St. & Co.*, 656 F.3d at 982 (observing that a court should be "cautious about labeling as 'forum shopping' a plaintiff's desire to bring previously unasserted claims in federal court").

The lynchpin in this case is the eighth factor. "[T]he existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a stay." *Bakie*, 867 F.3d at 1170 (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993)). As the Supreme Court has explained:

> When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. *If there is any substantial doubt as to this,* it would

> be a serious abuse of discretion to grant the stay or dismissal at all. Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses.

*Cone Mem'l Hosp.*, 460 U.S. at 28 (internal citation omitted; emphasis added); *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277 (1988) ("[A] district court may enter [a *Colorado River*] order only if it has full confidence" that the parallel state proceeding will completely and promptly resolve the parties' dispute). "Though 'exact parallelism . . . is not required,' substantial similarity of claims is necessary before abstention is available." *Seneca*, 862 F.3d at 845 (quoting *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989)); *see also Bakie*, 867 F.3d at 1170 (discussing *Nakash* and noting that the parallelism was met "even though additional parties [are] named in the state suit, the federal suit include[s] additional claims, and the suits arguably focused on different aspects of the dispute."). As a result, the absence of parallelism has often been "dispositive" of the question whether to grant a *Colorado River* stay or dismissal. *See, e.g.*, *Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1033–34 (9th Cir. 2005); *Holder*, 305 F.3d at 868, 870; *Intel Corp*, 12 F.3d at 913.

Here, even a stay is unwarranted because the state court action will not necessarily resolve all of the issues or claims in this case. When compared to the state court action, this controversy is far more robust and concerns not only alleged misconduct during the sale of the Property but also alleged misrepresentations by

the Yates several years prior when the rental agreement was executed. Dkt. No. 1, ¶¶ 13–28. Moreover, the Frankes have sought to impute the actions of the Yates onto CRC. *Id.* at ¶¶ 33–36. By contrast, the state court action concerns primarily the Frankes' breach of the listing agreement for the Property when they allegedly "caused the escrow to not pay" the Yates the agreed-upon amount at closing. Dkt. No. 17-2, ¶¶ 9–13. CRC is not a party to the state court action. Thus, the state court in Nevada will not be adjudicating the rights of CRC, and therefore the "same pertinent parties" are not present in the state and federal proceedings. *Bakie*, 867 F.3d at 1170. Although there is the possibility the state court will reach many of the issues in this case in deciding the Yates' breach of contract claim in connection with the Frankes' affirmative defenses of, *inter alia*, offset, fraud, and unclean hands, the state court may very well confine its analysis to the four corners of the listing agreement because the Frankes have not asserted a counterclaim. Given these differences between the state and federal proceedings and the inherent contingencies involved, the Court is left with "substantial doubt" that the state court action will result in the "complete and prompt resolution of the issues between the parties." *Cone Mem'l Hosp.*, 460 U.S. at 28. Thus, this Court cannot grant a stay, much less dismissal. *See, e.g.*, *Smith*, 418 F.3d at 1033–34. Notwithstanding, at a minimum, the eighth factor certainly does not counsel against jurisdiction.

On balance, the *Colorado River* factors counsel in favor of continuing these proceedings because there is nothing "exceptional" here to outweigh the "strong presumption against federal abstention." *Seneca*, 862 F.3d at 842, 847. This case stands in polar contrast to *Colorado River* where more than a thousand defendants were named in the parallel state court action involving the State's comprehensive system for regulating scarce water resources in the Southwest. *Colo. River*, 424 U.S. at 804–05, 819–20. In short, this state law case for fraud and breach of contract is not so "exceptional" so as to justify abdicating the "virtually unflagging obligation" of a federal court to exercise its jurisdiction. *Colo. River*, 424 U.S. at 817. Accordingly, the Yates' motion is DENIED.

## II. CRC's Motion to Dismiss

CRC moves to dismiss under Rule 12(b)(6), arguing that the Frankes failed to mediate the dispute prior to filing this lawsuit, as required by the terms of the parties' listing agreement (Dkt. No. 15-5) (the "Agreement"). Dkt. No. 15 at 2; Dkt. No. 15-1 at 5. The Court concludes otherwise.

The consensus among district courts is that "[f]ailure to mediate a dispute pursuant to a contract that makes mediation a condition precedent to filing a lawsuit warrants dismissal" under Rule 12(b)(6). *See, e.g.*, *Brosnan v. Dry Cleaning Station, Inc.*, No. C-08-02028, 2008 WL 2388392, at *1–2 (N.D. Cal. June 6, 2008) (dismissing the complaint without prejudice where plaintiff failed to

fulfill mediation condition precedent); *Delamater v. Anytime Fitness, Inc.*, 722 F. Supp. 2d 1168, 1180–81 (E.D. Cal. 2010); *Brooks v. Caswell*, No. 3:14-cv-01232, 2015 WL 5178080, at *4 (D. Or. Sept. 3, 2015); *Del Rey Fuel, LLC v. Bellingham Marine Indus.*, No. CV 12-01008, 2012 WL 12941956, at *3 (C.D. Cal. Apr. 10, 2012); *Centaur Corp. v. On Semiconductor Components Indus., LLC*, No. 09-cv-2041, 2010 WL 444715, at *3 (S.D. Cal. Feb. 2, 2010). The Frankes do not dispute this principle. Instead, they contend that mediation is not a condition precedent under the terms of the Agreement. Dkt. No. 29 at 4. Thus, the question is purely a matter of contract interpretation.

Under Hawaii law,[5] "the construction and legal effect to be given a contract is a question of law" and "whether a contract is ambiguous is likewise a question of law." *Brown v. KFC National Mgmt. Co.*, 921 P.2d 146, 159 (Haw. 1996). In the absence of ambiguity, "[c]ontract terms are interpreted according to their plain, ordinary, and accepted sense in common speech." *Hawaiian Ass'n of Seventh-Day Adventists v. Wong*, 305 P.3d 452, 461 (Haw. 2013). The "objective is to ascertain

---

[5]A federal court sitting in diversity must apply the choice-of-law rules of the forum state, in this case, Hawaii. *Klaxon Co. v. Stentor Elect. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). In determining which State's contract law will govern, Hawaii's choice-of-law rules look to "the state with the most significant relationship to the parties and subject matter." *Lewis v. Lewis*, 748 P.2d 1362, 1365 (Haw. 1988). Here, the Frankes reside in Nevada, (Dkt. No. 1, ¶ 4), but otherwise the real property at the center of this dispute is located in Hawaii, the conduct alleged occurred in Hawaii, and it appears the Agreement was drafted and executed in Kailua-Kona, Hawaii (the place of CRC's place of business). *See* (Dkt. No. 15-5). Hawaii contract law therefore governs.

and effectuate the intention of the parties as manifested by the contract in its entirety." *Brown*, 921 P.2d at 160 (citation and internal quotation marks omitted). "Where it is doubtful whether words [in a contract] create a promise or an express condition, they are interpreted as creating a promise." *Caldeira v. Sokei*, 417 P.2d 823, 828 (Haw. 1966).

In contending that dismissal is warranted because mediation is a condition precedent to filing a lawsuit, CRC points to Section 14(c) of the parties' Agreement.[6] In pertinent part, that section states:

> If any dispute or claim in law or equity arises out of this Contract, and the parties are unable to resolve the dispute, Seller agrees to attempt in good faith to settle such dispute or claim by non-binding mediation . . . If the mediation is not successful, then Seller will consider arbitration and may seek legal counsel to make this determination.

Dkt. No. 15-5 at 3. It is clear from the plain, unambiguous language of Section 14(c), that the parties did not intend to impose mediation as a *condition precedent* to filing a lawsuit.

---

[6]Although materials outside the pleadings are generally not considered in ruling on a Rule 12(b)(6) motion, a court "may consider extrinsic evidence not attached to the complaint if the document's authenticity is not contested and the plaintiff's complaint necessarily relies on it." *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007 (9th Cir. 2015); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (noting that such documents attached to a defendant's motion to dismiss may be considered, "even though the plaintiff does not explicitly allege the contents of that document in the complaint."). Here, the Frankes reference the Agreement in the complaint, alleging that on "January 2, 2016, [the Frankes] entered into a written contract to sell the Property with Yates and [CRC] acting as the broker." Dkt. No. 1, ¶ 61. Accordingly, the Court will consider the Agreement attached as an exhibit to CRC's motion to dismiss.

When courts have found that mediation is a condition precedent to initiating litigation, the parties' agreement has both (i) addressed the issue of filing a lawsuit, and (ii) specified that mediation must first take place, neither of which are present in Section 14(c). The host of cases cited by CRC make this clear.

In *Brosnan*, the mediation clause stated, in relevant part: "the Company and the Franchisee each agree to enter into mediation of all disputes involving this Agreement . . . ***prior to initiating any legal action against the other.***" 2008 WL 2388392, at *1 (emphasis added). In *Brooks*, the agreement likewise provided: "If any . . . claim arises out of or relat[es] to this Agreement, the Parties agree first to try in good faith to settle the dispute by non-binding mediation ***before resorting to . . . litigation***." *Brooks*, 2015 WL 5178080, at *5 (alterations in original; emphasis added). Similarly, in *Delamater*, the language at issue was explicit: "We each agree to enter into mediation of all disputes involving this Agreement . . . ***prior to initiating any legal action or arbitration against the other***." 722 F.Supp.2d at 1177. Finally, in *Centaur* the cascading mediation provision established that the parties "will attempt to settle any claim or controversy arising out of the Agreement . . . . then the dispute will be mediated by a mutually acceptable mediator . . . ." and the dispute "***may then be submitted to the courts within Arizona for resolution***." *Centaur*, 2010 WL 444715, at *1–2 (S.D. Cal. Feb. 2, 2010); *see also Del Rey Fuel, LLC v. Bellingham Marine Indus.*, No. CV 12–01008, 2012 WL 12941956, at *4 (C.D. Cal.

Apr. 10, 2012) (mediation clause stated: "Any Claims arising out of or related to the Contract, . . . shall . . . be subject to mediation ***as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party***." (emphasis added)).

The text of Section 14(c) is patently different from the language in the cases above. Section 14(c) does not even mention the concept of litigation, much less unambiguously provide that mediation is a condition that a party must satisfy *before* filing a lawsuit. *See Gregg Kendall & Assocs. v. Kauhi*, 488 P.2d 136, 140 (Haw. 1971). At best, the provision creates a "promise" to mediate, *Caldeira*, 417 P.2d at 828, and perhaps "consider arbitration." Dkt. No. 15-5 at 3. But there is nothing in the Agreement that requires a party to do so before exercising their right to file suit in federal court. This is significant because timing is everything when it comes to conditions precedent and, as is often the case, parties engage in mediation *during* litigation. *See* Dkt. No. 44. Therefore, it cannot be said that the parties here agreed to restrict their right to file a lawsuit before engaging in mediation. *Dreamston Entm't, Ltd. v. Maysalward, Inc.*, No. 2:14–cv–02063, 2014 WL 4181026, at *8–9 (C.D. Cal. Aug. 18, 2014) (holding that in light of the contract, "mediation was not a condition precedent for filing suit").

Accordingly, CRC's motion to dismiss is DENIED.

# CONCLUSION

For the reasons set forth herein, Defendants Julia and Dennis Yates' Motion to Dismiss or Stay the Proceedings Based on the *Colorado River* Doctrine, Dkt. No. 17, is DENIED, and Defendant CRC's Motion to Dismiss the Complaint, Dkt. No. 15, is DENIED.

IT IS SO ORDERED.

DATED: October 1, 2019 at Honolulu, Hawaiʻi.

Derrick K. Watson
United States District Judge

---

*Hans Franke et al v. Julia A Yates et al*; Civil No. 19-00007 DKW-RT**; ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS**